**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| FELIX WILSON, *et al.*, | ) | CASE NO. 4:12CV2163 |
| | ) | |
| Plaintiffs, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| TRUMBULL COUNTY DEPARTMENT | ) | |
| OF JOB AND FAMILY SERVICES, | ) | |
| *et al.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

On January 25, 2013, this matter was referred pursuant to Local Rule 72.1 (Doc. No. 22),

for consideration of the following dispositive motions:  (1) Motion to Dismiss by Defendants

Dan Superak and Village of McDonald Mayor Glenn W. Holmes (Doc. No. 9), and (2) Motion

to Dismiss by Defendants Hospice of the Valley, Cindy Phillips and Judith Makosky. (Doc. No.

6).   For the following reasons the Court recommends that the Motions to Dismiss be granted.

### I.  Procedural Background

On August 23, 2012, Plaintiffs Darlene Wilson and Felix Wilson (hereinafter "Plaintiffs")

filed a Complaint against the Trumbull County Department of Job and Family Services Adult

Protective Services (hereinafter "APS"); APS employees Andrea Crook and Anthony Laprocina,

in both their official and individual capacities; Trumbull County Commissioners Daniel Polivka,

Paul Heltzel, and Frank Fuda; Hospice of the Valley (hereinafter "HV"); HV employees Cindy

Phillips and Judith Makosky, in both their official and individual capacities; Village of

McDonald, Ohio Mayor Glenn W. Holmes, in his official capacity; and, Village of McDonald

Police Officer Dan Superak, in both his official and individual capacities.

The Complaint asserts the following causes of action: (1) violation of Plaintiffs' civil rights

pursuant to 42 U.S.C. § 1983 based on the Fifth, Eighth, and Fourteenth Amendments to the

United States Constitution; (2) tortious interference with rights of inheritance; (3) tortious

interference with child-parent relationship; (4) breach of fiduciary responsibility; and, (5)

negligent hiring and training.  Plaintiffs seek general, compensatory, and punitive damages.

(Doc. No. 1).

On November 2, 2012, Defendants HV, Phillips and Makosky (hereinafter "the HV

Defendants") filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 6.)

Plaintiffs filed a Memorandum in Opposition on December 19, 2012, and the HV Defendants

thereafter filed their Reply on December 21, 2012. (Doc. Nos. 19, 20.)

On November 5, 2012, Defendants Superak and Holmes also filed a Motion to Dismiss

pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. No. 9.)  Plaintiffs filed a Memorandum in Opposition

on December 5, 2012, the Defendants Superak and Holmes filed their Reply on December 14,

2012. (Doc. Nos. 13, 18.)[1]

## II. Factual Allegations

The Complaint contains the following allegations:

---

[1]        Defendants APS, Crook, Laprocina, Polivka, Heltzel and Fuda filed an Answer on
November 5, 2012 (Doc. No. 12.)  They have not moved to dismiss.

2

Plaintiff Darlene Wilson is the daughter of William T. Lemon. (Compl. ¶ 2.)  Plaintiff Felix Wilson is Mr. Lemon's son-in-law. (Compl. ¶ 2.)  In July 2010, Mr. Lemon was hospitalized and told he would require extended care.  (Compl. ¶ 12.)  At this time, he suffered from "end-stage disease, severe COPD, chronic respiratory failure, probably superimposed pneumonia as well as advanced dementia." (Compl. ¶ 15.)  Mr. Lemon was seventy-nine years old. (Compl. ¶ 2.)

On July 19, 2010, Darlene Wilson spoke to a Dr. Chaves, who informed her that Mr. Lemon's prognosis was very poor.  (Compl. ¶ 16.)   Ms. Wilson was aware that her father was not going to survive long and needed to be made comfortable.  (Compl. ¶ 16.)  Plaintiffs arranged for Mr. Lemon to move into their residence for the final days of his life, and allege that they took good care of him at all times relevant to the Complaint.  (Compl. ¶¶ 12, 17.)

On September 20, 2010, Defendant APS (through Defendants Crook and Laprocina), the HV Defendants, and Defendants Superak and Holmes "organized the removal of" Mr. Lemon from Plaintiffs' residence. (Compl. ¶ 13.)  Plaintiffs allege that neither Defendants Crook or Superak were competent to make a determination as to whether Mr. Lemon had "significant dementia" or whether he had the ability to express his intentions about his care. (Compl. ¶ 14.) They assert that Defendants wrongfully and forcibly removed Mr. Lemon from the Plaintiffs' residence and "promptly turned him over to a 'friend,' Jean White, who changed his will and Power of Attorney, all while Mr. Lemon was not competent." (Compl. ¶ 18.)  Plaintiffs further allege that Defendants did not have permission from the Trumbull County Probate Court to "take possession of" Mr. Lemon. (Compl. ¶ 11.)

### III.  Standard of Review

**A.      Fed. R. Civ. P. 12(b)(6)**

To determine whether a complaint states a claim upon which relief can be granted, the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

In order "to survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (*quoting in part Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (*quoting in part Twombly*, 550 U.S. at 555-556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466

4

(*quoting in part Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081

(2007)) (*quoting Twombly*, 127 S.Ct. at 1964).  Nonetheless, while "Rule 8 marks a notable and

generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*,

556 U.S. at 679.  "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a

plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal

argument."  *Skinner v. Switzer*, 562 U.S. –, 131 S.Ct. 1289, 179 L.Ed.2d 233, 236 (2011).

###    B.    Materials Considered in Resolving Defendants' Motions

Defendants Superak and Holmes attach two exhibits in support of their Motion to Dismiss,

both of which Plaintiffs claim are outside the scope of the Complaint and improperly considered

on a Rule 12(b)(6) motion.  The first exhibit is a September 20, 2010 police report authored by

Defendant Superak. (Doc. No. 9-1 at 1-7.)  This report describes Defendant Superak's (1)

discussions with Defendant APS prior to the removal of Mr. Lemon from Plaintiffs' home, and

(2) conversations he allegedly had with Plaintiffs, Mr. Lemon, and Mr. Lemon's doctor during

the removal process.  (Doc. No. 9-1 at 6-7.)  The second exhibit is a Temporary Restraining

Order ("TRO") issued by the Trumbull County Probate Court on September 20, 2010, which

prohibits interference with the investigation of the adult protective service case relating to Mr.

Lemon.  (Doc. No. 9-1 at 8.)

Plaintiffs contend this Court should not consider these exhibits because they present facts

outside the pleadings and are not appropriate in the context of a Rule 12(b)(6) motion to dismiss.

(Doc. No. 13 at 5.)  Defendants do not address this issue in their Reply Brief.  (Doc. No. 18.)

A motion to dismiss under Rule 12(b)(6) tests the adequacy of the pleadings and, thus, a

court may generally not consider materials beyond the contested pleading itself in ruling on the motion.  *Winget v. J.P. Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008).  The Sixth Circuit has held, however, that when a court is presented with a Rule 12(b)(6) motion, "it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are central to the claims contained therein."  *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  *See also Rondigo L.L.C. v. Township of Richmond,* 641 F.3d 673, 681 (6th Cir. 2011).

If materials other than those referenced above are offered in support of a motion to dismiss, the motion may be treated as one for summary judgment and disposed of as provided in Fed. R. Civ. P. 56.  *See* Fed. R. Civ. P. 12(d).  It is within the court's discretion to consider material beyond the pleadings which is submitted with a Rule 12(b)(6) motion.  *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008).  If the court chooses to consider the material, it must generally convert the Rule 12(b)(6) motion into a motion for summary judgment.  *Id.  See Tackett v. M & G Polymers, U.S.A., L.L.C.*, 561 F.3d 478, 487 (6th Cir. 2009).  However, where the court does not rely on such materials, or considers them irrelevant to resolution of the merits of the motion, the court does not err in simply considering the motion as a motion to dismiss. *Gudenas v. Cervenik*, 2010 WL 987699 at *3 (N.D. Ohio Feb. 22, 2010).

The Court will not rely on the September 20, 2010 police report in considering Defendants' Motion.  This report is neither attached as an exhibit to the Complaint, or expressly referred to at any point in that pleading, and Defendants do not argue that it constitutes a "public record." While the report does arguably relate to matters which are central to the Plaintiffs' claims, the

6

Court finds consideration of the police report would not be appropriate at this stage of the proceedings.  The report contains Defendant Superak's version of the incident in question and descriptions of conversations he claims to have had with Plaintiffs, Mr. Lemon, and Mr. Lemon's physician.  As the Sixth Circuit has noted, "[w]here the evidence 'captures only part of the incident and would provide a distorted view of the events at issue,' . . . we do not require a court to consider that evidence on a 12(b)(6) motion." *Jones*, 521 F.3d at 562 (quoting *Passa v. City of Columbus*, 2005 WL 372305 at * 3 (6th Cir. Feb. 16, 2005)("[I]n order to preserve a party's right to a fair hearing, a court, on a motion to dismiss, must only take judicial notice of facts which are not subject to dispute").  Accordingly, the Court will not consider the September 20, 2010 police report (Doc. No. 9-1 at 1-7) in connection with the instant motions.

The Court will, however, take notice of the September 20, 2010 TRO issued by the Trumbull County Probate Court.  (Doc. No. 9-1 at 8.)  As noted above, the Court may consider public records in ruling on a Rule 12(b)(6) motion to dismiss without requiring that the motion be converted to a motion for summary judgment.  *See Bassett*, 528 F.3d at 430; *J.P. Silverton Indus. L.P. v. Sohm,* 2007 WL 1875954 at * 3 (6th Cir. June 26, 2007); *Embassy Realty Investments, LLC v. City of Cleveland*, 877 F.Supp.2d 564, 571 (N.D. Ohio 2012).  While Plaintiffs claim generally that the TRO was "improperly attached" to Defendants' Motion, they do not challenge that the TRO is a public record nor do they offer any other specific reason why this Court should not consider it.  Accordingly, and in the absence of any meaningful argument to the contrary, the Court finds the September 20, 2010 TRO constitutes a "public record" and

will take judicial notice of it in resolving Defendants' Motion.[2]

### IV.  Law and Analysis

**A.  Defendant Superak and Holmes' Motion to Dismiss**

**1.  Federal Claims**

Plaintiffs allege the following federal claims against Defendants Superak and Holmes

pursuant to 42 U.S.C. § 1983.  In Count One, Plaintiffs allege Defendants deprived them of their

constitutional right to "enjoy the presence of their father and care for their father during the end

of life," in violation of the First, Fifth, Eighth, and Fourteenth Amendments. (Doc. No. 1 at ¶

19.)[3]  In Count Five, Plaintiffs allege municipal liability on the basis that the Village of

McDonald negligently failed to train and supervise Defendant Superak in the "proper legal

means of taking an adult from their home." (Doc. No. 1 at ¶ 31.)[4]

The Court will first address Plaintiffs' federal claims as asserted against Defendant Superak

---

[2]        To the extent the TRO states any disputed facts, however, the Court will not take judicial notice of the truth of such facts.  *See Passa,* 2005 WL 372305 at * 3; *Embassy Realty Investments*, 877 F.Supp.2d at 571 ("[W]hile the Court takes judicial notice of the existence of the [public] documents and the proceedings in which the documents were generated, . . . the Court does not take judicial notice of the truth of any statement of facts contained within these documents").

[3]        The Complaint itself references only the Fifth, Eighth, and Fourteenth Amendments. (Doc. No. 1 at ¶ 19.)  In their Brief in Opposition, Plaintiffs indicate this claim also asserts a constitutional deprivation of familial association under the First Amendment. (Doc. No. 13 at 6.)  While Plaintiffs should have explicitly pled any First Amendment claim in the Complaint itself, the Court will nevertheless construe Plaintiffs' deprivation of familial association claim as also alleging a First Amendment violation for purposes of the instant motions.

[4]        Count Five does not specifically reference § 1983 as the basis for Plaintiffs' failure to train/supervise claim.  In their Brief in Opposition, Plaintiffs clarify that they intend to assert this claim against these Defendants as a federal constitutional claim. (Doc. No. 13 at 9-10.)

in his individual capacity.  The Court will then consider Plaintiffs' official capacity federal claims, as construed against the Village of McDonald, Ohio.

### a.        Defendant Superak– Individual Capacity Claims

To establish a claim under § 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Simescu v. Emmet County Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991).  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979).  The first step in any such claim is to identify the specific constitutional right allegedly infringed.  *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Baker*, 443 U.S. at 140.

Here, Plaintiffs claim that, "[b]y entering the Wilson's house and removing Lemon without valid legal authority," Defendant Superak "directly interfered with the Wilson's right to make important family decisions," thereby violating their due process right to familial association. (Doc. No. 13 at 5.)  They assert the Complaint states plausible claims under both the First and Fourteenth Amendments based on "[a]llegations that Superak . . . without any legal authority came to a daughter's and son-in-law's house and removed an elderly, terminally ill father suffering from advanced dementia." (Doc. No. 13 at 6.)

Defendant Superak first argues this claim should be dismissed because, as a matter of law, an adult child does not have a constitutionally protected right of companionship with his or her parent.  (Doc. No. 9 at 4-6.)  He further argues that, even if the Court were to recognize such a constitutional right, he is entitled to qualified immunity because Plaintiffs cannot demonstrate

9

this right was clearly established at the time of the removal of Mr. Lemon from Plaintiffs' home. (Doc. No. 9 at 7-8.)

Qualified immunity protects public officials from liability for civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Sixth Circuit follows a "two-tiered inquiry" to determine if an officer is entitled to qualified immunity. *Austin v. Redford Twp. Police Dept.*, 690 F.3d 490, 496 (6th Cir. 2012). *See also Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). The first step is to determine if the facts alleged make out a violation of a constitutional right. *Pearson*, 555 U.S. at 232. The second is to ask if the right at issue was "clearly established" when the event occurred such that a reasonable officer would have known that his conduct violated it. *Id. See also Martin*, 712 F.3d at 957. The Supreme Court has explained that these two steps may be addressed in any order. *Pearson*, 555 U.S. at 236. "But both must be answered in the affirmative for the case to go to a factfinder to decide if each officer's conduct in the particular circumstances violated a plaintiff's clearly established constitutional rights." *Martin*, 712 F.3d at 957. If either one is not satisfied, qualified immunity will shield the officer from civil damages. *Id. See also Pearson*, 555 U.S. at 236.

As it is dispositive of the issue, the Court will address the second tier of the inquiry first; i.e. whether Plaintiffs' alleged right to familial association with Mr. Lemon was "clearly established" at the time of his removal from Plaintiffs' home in September 2010. For the following reasons, the Court finds that it was not.

The Sixth Circuit has explained that, in the context of qualified immunity, "[t]he sources of

clearly established law to be considered are limited." *Martin*, 712 F.3d at 961.  This Court should

"'look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other

courts within our circuit, and finally to decisions of other circuits.'"  *Id*. (quoting *Champion v.*

*Outlook Nashville, Inc*., 380 F.3d 893, 902 (6th Cir. 2004)).  Here, Plaintiffs fail to cite any

binding authority from either the United States Supreme Court or the Sixth Circuit suggesting

that adult children have a constitutionally protected right of familial association with their

parent.[5]  Moreover, at least one district court from within this Circuit has dismissed § 1983

claims premised on the violation of such a right.  In *Kyle v. Sims*, 2007 WL 2463312 (E.D. Mich.

Aug. 30, 2007), the plaintiff, an adult, alleged that a Protective Services Worker employed by the

State of Michigan violated her constitutional rights when she "defrauded, intimidated, and gave

legal advice [to plaintiff's mother] to revoke Plaintiff's Power of Attorney."  *Id*. at * 2-3.

Defendant moved to dismiss on the basis of qualified immunity.  The district court first found

that "[w]hile it is understandable that Plaintiff would like to continue her relationship with her

elderly mother, such a relationship is neither a Constitutional Right nor one secured by the laws

of the United States under the First or Fourth Amendment." *Id*. at * 4.  With regard to plaintiff's

due process claim under the Fourteenth Amendment, the district court noted that neither the

Supreme Court or the Sixth Circuit had recognized that the relationship of an adult child with an

elderly parent is a clearly established constitutional right.  *Id*. at * 5.  Although it conjectured

---

[5]      Plaintiffs' reliance on the Sixth Circuit's decision in *Smith v. Williams-Ash*, 520 F.3d 596 (6th Cir. 2008) is misplaced.  In *Smith*, parents sued a social worker after their *minor* children were removed from their home.  *Id*. at 598-599.  While this decision recognized the general principle that the parent-child relationship gives rise to a liberty interest under the Fourteenth Amendment, *id.* at 599, it did not address the question of whether a constitutional right of familial association exists between an *adult* child and his or her parent.

that the Sixth Circuit would likely recognize such a right under the Fourteenth Amendment, the court concluded that defendant was nevertheless entitled to qualified immunity because "Plaintiff failed to demonstrate that at the time Defendant committed the challenged acts, this right was clearly established in the Sixth Circuit– either the liberty interest in an adult child's relation with a parent or in any predeprivation process related to such a right." *Id.* at * 7.

Thus, looking first to decisions of the Supreme Court, the Sixth Circuit, and decisions from other courts within the Sixth Circuit, the Court finds that a constitutional right to familial association between an adult child and his or her parent was not clearly established at the time Mr. Lemon was removed from Plaintiffs' residence.  Moreover, even if the Court were to consider decisions of the other Circuit Courts of Appeals, it cannot be said that the existence of such a right was clearly established.  As Defendants correctly note, other Circuit Courts of Appeals that have considered whether a constitutional right of familial association exists between adult children and their parents are split on the issue.  While the Ninth and Tenth Circuits appear to have recognized this constitutional right under certain circumstances, the Seventh, Eleventh and D.C. Circuits have declined to do so.  *Compare Lee v. City of Los Angeles*, 250 F.3d 668, 685-686 (9th Cir. 2001) (recognizing constitutional rights of mentally disabled adult child and his mother to familial association under the First and Fourteenth Amendments) and *Trujillo v. Bd. of County Comm'rs*, 768 F.2d 1186, 1188-1189 (10th Cir. 1985) (recognizing parent's constitutionally protected interest in right of intimate association with her adult son); *with Robertson v. Hecksel*, 420 F.3d 1254, 1259-1260 (11th Cir. 2005) (holding Fourteenth Amendment's substantive due process protections do not extend to the relationship between a mother and her adult son); *Russ v. Watts*, 414 F.3d 783, (7th Cir. 2005) (holding

parents had no constitutional right under the due process clause to recover for loss of society and companionship of adult son); *Butera v. District of Columbia*, 235 F.3d 637, 656, n. 23 (D.C. Cir. 2001) (holding that "a parent-child relationship between two independent adults does not invoke constitutional 'companionship' interests").

Plaintiffs argue that the *Russ* and *Robertson* decisions from the Seventh and Eleventh Circuits, respectively, finding no constitutional right of familial association are distinguishable from the instant case because they involved claims of "indirect interference with the parent-child relationship." (Doc. No. 13 at 3, fn 1.) Plaintiffs maintain that their constitutional claims allege "direct interference" with their relationship with Mr. Lemon, and argue "[n]o court has held that there is no constitutionally protected right to familial association between an adult child and his or her parent when direct interference is alleged." *Id.*

Plaintiffs' argument is unavailing, however, because that is not the test for determining whether a constitutional right is "clearly established" for purposes of qualified immunity. As the Sixth Circuit recently explained, in order to be clearly established, "the right's contours must be 'sufficiently clear' to show that 'a reasonable official would understand that what he is doing violates that right.'" *Martin*, 712 F.3d at 960 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In this context, it is immaterial whether any Circuit Court of Appeals has explicitly found that there is no constitutional right of familial association where direct interference is alleged. Rather, the Court must look to whether there is precedent from which a reasonable officer would understand that his conduct amounted to a constitutional violation. In light of the lack of binding precedent in this Circuit and the division among the other Circuits on this issue, it cannot be said that a reasonable officer in Defendant Superak's position would understand that

13

participating in the APS investigation and removal of Mr. Lemon from Plaintiffs' residence violated Plaintiffs' constitutional right of familial association.

Accordingly, the Court finds Plaintiffs have not established that they had a clearly established right of familial association with Mr. Lemon under the circumstances presented herein, regardless of whether their claim is made under the First, Fifth, Eighth or Fourteenth Amendments. Therefore, it is recommended that Count One against Defendant Superak in his individual capacity be dismissed with prejudice.

### b.      Village of McDonald

Plaintiffs also assert federal claims against Defendants Superak and Holmes in their official capacities as Village of McDonald, Ohio police officer and mayor, respectively. It is well-established that a suit against a person in his official capacity is construed as a suit against the governmental entity which he represents. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("While '[p]ersonal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent")(quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Thus, Plaintiffs' official capacity claims against Defendants Superak and Holmes are construed as against the Village of McDonald, Ohio ("the Village").

As the Sixth Circuit has explained, "[t]he question of whether a municipality is liable under § 1983 has two parts: '(1) whether [the] plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Lee v. Metropolitan Government of Nashville and Davidson County*, 2011 WL 2882227 at * 12 (6th Cir. July 18, 2011) (quoting

14

*Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992)).[6]  Under the first part of this

inquiry, a municipality cannot be held liable under § 1983 "based on the actions of one of its

officers when in fact . . . the officer inflicted no constitutional harm." *City of Los Angeles v.

Heller*, 475 U.S. 796, 799 (1986).  *See also Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir.

2007)("In fact, because the jury found no constitutional violation . . . the county could not have

been found liable . . . for an allegedly unconstitutional custom or policy"); *Ewolski v. City of

Brunswick*, 287 F.3d 492, 516 (6th Cir. 2002) ("Where, as here, a municipality's liability is

alleged on the basis of the unconstitutional actions of its employees, it is necessary to show that

the employees inflicted a constitutional harm").

Here, Count One is premised on the claim that Defendant Superak violated Plaintiffs'

constitutional right of familial association with Mr. Lemon.  As set forth above, neither the

Supreme Court nor the Sixth Circuit has recognized the existence of such a constitutional right

and this Court has concluded, *supra*, that Defendant Superak is entitled to qualified immunity on

the grounds that Plaintiffs have failed to establish the violation of a "clearly established"

constitutional right.  Thus, it is questionable whether Plaintiffs have satisfied the first tier of the

inquiry for establishing municipal liability under § 1983.  *Lee*, 2011 WL 2882227 at * 12.

Even assuming Plaintiffs have demonstrated an underlying constitutional violation, they

must still demonstrate that the Village is responsible for that violation.  A municipality, however,

---

[6]      The Village, as a municipality, may not assert a qualified immunity defense
against Plaintiffs' federal claims. *See Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005)("The
qualified immunity defense is not available to municipalities or to persons acting on behalf of
municipalities . . . when sued in their official capacity only"); *Martin v. City of Broadview
Heights*, 2011 WL 3648103 at * 8 (N.D. Ohio Aug. 18, 2011) ("The City, as a municipality, may
not assert a qualified immunity defense against Plaintiffs' federal claims").

15

may only be held responsible for a constitutional violation based on § 1983 where its "official policy or custom actually serves to deprive an individual or his or her constitutional rights." *Gregory v. City of Louisville*, 444 F.3d 725, 752-53 (6th Cir. 2006). The Sixth Circuit recently explained the contours of municipal liability as follows:

> The Supreme Court has approved municipal liability based on § 1983 when "the [municipal] action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or where such actions emanate from informal governmental custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In other words, the constitutional violation must have sprung from "official policy" in one form or another. *Id.* at 694, 98 S.Ct. 2018. As such, local government units cannot be held liable mechanically for their employees' actions under a respondeat superior theory. *Id.* at 691, 98 S.Ct. 2018. The plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bryan Cnty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). He "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

*Alman v. Reed*, 703 F.3d 887, 902-903 (6th Cir. 2013). *See also Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) ("[T]o satisfy the *Monell* requirements, a plaintiff must identify the policy, connect the policy to the [government entity] itself and show that the particular injury was incurred because of the execution of that policy").

Here, Plaintiffs have not identified any policy or custom connected to the Village itself that resulted in their alleged injury. The Complaint states only that "[t]he actions of the government actors were done by decision makers acting under color of law and pursuant to a custom or practice." (Doc. No. 1 at ¶ 20.) Plaintiffs do not identify any particular custom, practice, or policy of the Village, much less one that is relevant to the removal of elderly parents from the homes of their adult children. Moreover, Plaintiffs do not plead any factual allegations suggesting that their

16

particular injury was incurred because of the execution of a Village policy or custom.

While Plaintiffs do recite the phrase "custom and practice" in the Complaint, such bare legal conclusions are not enough to survive a motion to dismiss under Rule 12(b)(6).  *See Twombly*, 555 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. . . . a plaintiff[] [must allege] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do")(internal citations omitted). In the instant case, the Complaint's fleeting reference to an unspecified "custom or practice" does not sufficiently identify a relevant Village policy or suggest that Plaintiffs' injury was the result of such a policy.  In light of these pleading deficiencies, the Court finds that Count One of the Complaint cannot be construed as setting forth a "plausible" claim for municipal liability under § 1983.  It is therefore recommended that Plaintiffs' § 1983 official capacity claims against Defendants Superak and Holmes under Count One be dismissed with prejudice.[7]

Plaintiffs also allege § 1983 official capacity claims for failure to properly train, and negligent hiring and retention.  (Doc. No. 1 at ¶ 31.)  With respect to their failure to train claim, Plaintiffs assert the Village "did not educate Superak about constitutionally protected rights of familial association, and sent an untrained officer to the Wilson's home on September 20, 2010."

---

[7]       The Court recognizes that, in the absence of discovery, civil rights plaintiffs face challenges in pleading the existence of a municipal custom or policy. However, applying the principles set forth in *Twombly* and *Iqbal*, district courts have held that a plaintiff must nevertheless plead sufficient factual allegations to support a claim of municipal liability under § 1983 in order to survive dismissal under Rule 12(b)(6).  *See e.g. Hutchison v. Metro. Gov't of Nashville & Davidson Cnty.*, 685 F.Supp.2d 747, 749 (M.D. Tenn. 2010); *Cunningham v. Cleveland Police Dep't*, 2010 WL 5636778 at * 6 (N.D. Ohio Dec. 22, 2010); *Wooten v. Spigner*, 2011 WL 5075692 (E.D. Mich. Sept. 8, 2011) *adopted by* 2011 WL 5075714 (E.D. Mich. Oct. 25, 2011).  Here, Plaintiffs' perfunctory assertion of an unspecified "custom and practice" is simply insufficient to state a claim for municipal liability under § 1983, lack of discovery notwithstanding.

(Doc. No. 13 at 9.)  With regard to their claim of negligent hiring or retention, Plaintiffs argue summarily that "even if the Wilsons could not establish a failure to train claim against the municipal defendants, they could show that those defendants were deliberately indifferent in retaining Superak as their employee." *Id*. at 10.

As the Supreme Court recently explained, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011).  A municipality can be liable under § 1983 on a failure-to-train theory only when the "failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  This happens in the unusual case where "such inadequate training can justifiably be said to represent 'city policy.'" *Id*. at 390. *See also Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013).  The Sixth Circuit has characterized this standard as requiring a plaintiff to prove "three distinct facts": (1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the city's deliberate indifference; and (3) that the inadequacy is "closely related to" or "actually caused" the plaintiff's injury. *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir.1989) (citing *City of Canton*, 489 U.S. at 390–91). *See also Alman*, 703 F.3d at 903; *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

Here, the Complaint's sole allegation as to this claim is as follows: "Defendant, Village of McDonald, either on its own or through its agents, negligently failed to properly train and supervise its employees in the proper legal means of taking an adult from their home." (Doc. No. 1 at ¶ 31.)  No further factual allegations are provided.  In their Brief in Opposition, Plaintiffs note that the Complaint alleges Superak was not competent to evaluate Mr. Lemon's mental

capacity and that he acted without legal authority.  They argue that "logical extensions of those allegations . . . are that [the Village] did not educate Superak about constitutionally protected rights of familial association." (Doc. No. 13 at 9.)  They claim that Superak's "inadequacies" were "likely a function of defects in his training" and played a "direct role" in the alleged constitutional deprivations at issue. (Doc. No. 13 at 9.)

The Court finds Plaintiffs have failed to state a § 1983 claim against the Village for failure to train.  The Complaint does not set forth any allegations that the Village's training of Superak, or alleged lack thereof, rose to the level of deliberate indifference. "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd of Cty Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 410 (1997).  *See also Connick*, 131 S.Ct. at 1360.  As the Sixth Circuit has explained, deliberate indifference may be shown in either of two ways:

> [First, plaintiff can] 'show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.' In the alternative, 'a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability.'

*Plinton v. Cnty of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).  *See also Bryan County*, 520 U.S. at 409; *City of Canton*, 489 U.S. at 390 (finding that a municipality's conduct may constitute deliberate indifference when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy [is] . . . likely to result in the violation of constitutional rights").

As an initial matter, the Complaint herein does not contain any allegations regarding the

nature or content of the Village's training program, or the manner in which such program is inadequate in relation to the particular tasks that Defendant Superak performed in assisting in the removal of Mr. Lemon from Plaintiffs' residence.  Assuming Plaintiffs are alleging the Village's liability is premised on the failure to conduct any training on this issue, the Complaint is deficient because it does not allege prior instances of unconstitutional conduct relating to the investigation or removal of elderly parents from their children's homes, sufficient to suggest the Village should have been on notice of the need for such training.

Moreover, Plaintiffs fail to sufficiently allege that the violation of their constitutional rights was a highly predictable, or plainly obvious, consequence of the Village's failure to train.  As noted above, it is not clearly established in this Circuit that Plaintiffs enjoy a constitutional right to familial association with Mr. Lemon under the circumstances presented herein.  Thus, it cannot be said that it was "highly predictable" or "plainly obvious" that the Village's alleged failure to train on this issue would result in the deprivation of Plaintiffs' constitutional rights.

Nor can such allegations be necessarily inferred from Plaintiffs' assertion that Superak was not competent to evaluate Mr. Lemon's competence and had no legal authority to remove him from Plaintiffs' residence.  As the Supreme Court has explained, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390 -391.  Further, "[n]either will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Id.* at 391.  Rather, for liability to attach, "the identified deficiency in a city's training program must be closely related to the ultimate injury."

20

*Id*.  Plaintiffs' allegations that Superak lacked the competence or authority to assist in the removal of Mr. Lemon are not sufficient to demonstrate that an "identified deficiency" in the Village's training program was "closely related to" Plaintiffs' alleged injuries.  Even viewing the Complaint as a whole and in a light most favorable to Plaintiffs, the allegations are simply too attenuated to set forth a plausible claim for municipal liability under a failure to train theory.

For similar reasons, the Court finds that Plaintiffs fail to state a § 1983 claim for negligent hiring or retention.[8]  Where a plaintiff seeks to hold a municipality liable for negligently hiring and/or retaining a particular employee, the plaintiff must prove that the decision to hire or retain the employee "reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."  *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 411 (1997)).  *See also Stricker v. Township of Cambridge*, 710 F.3d 350, 365 (6th Cir. 2013) ("The standard for municipal liability in negligent hiring, training, and retention is deliberate indifference"); *Totman v. Louisville Jefferson County Metro Government*, 2010 WL 3245534 at * 11 (6th Cir. Aug. 13, 2010).  A finding of culpability cannot depend on the general probability that any officer inadequately screened will inflict some injury.  *Totman*, 2010 WL 3245534 at * 11.   "Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff."  *Brown*, 520 U.S. at 411 (emphasis in original).

Again, Plaintiffs plead no factual allegations suggesting that, in hiring and retaining

---

[8]     The Court notes that the Complaint does not clearly allege a claim for negligent hiring or retention. While the heading to Count Five is "Negligent Hiring or Training," none of the substantive allegations in that Count make any reference to hiring or retention decisions by the Village. However, as Plaintiffs argue in their Brief in Opposition that they intend to assert a claim for negligent hiring or retention, the Court will liberally construe the Complaint to assert such a claim for purposes of the instant motions.

Defendant Superak, the Village was deliberately indifferent to the risk that he would violate Plaintiffs' constitutional rights.  There are no allegations in the Complaint suggesting that some deficiency in Defendant Superak's history or background would make it "highly likely" that he would inflict the "particular injury" suffered by Plaintiffs herein; i.e. that Defendant Superak, in particular, would inflict a constitutional injury on Plaintiffs through his participation in the removal of Mr. Lemon from Plaintiffs' residence.  In the absence of any factual allegations suggesting deliberate indifference, the Court finds Plaintiffs have failed to state a plausible claim against the Village for negligent hiring and/or retention under § 1983.

Accordingly, and for all the reasons set forth above, it is recommended that Plaintiffs' § 1983 official capacity claims against Defendants Superak and Holmes under Count Five be dismissed with prejudice.

### 2. State Law Claims (Counts Two, Three, and Four)

Plaintiffs assert state law claims against Defendants Superak and Holmes for (1) tortious interference with rights of inheritance (Count Two); (2) tortious interference with child parent relationship (Count Three); and (3) breach of fiduciary duty (Count Four).  (Doc. No. 1 at ¶¶ 21-28.)  Defendants maintain the Village is a "political subdivision" within the meaning of Ohio Revised Code § 2744.01(F) and is, therefore, entitled to the immunities provided in Ohio Revised Code Chapter 2744.  Defendants further assert that none of the exceptions to immunity set forth in Ohio Rev. Code § 2744.02(B) apply and, therefore, Plaintiffs' state tort claims against the Village should be dismissed.

Plaintiffs do not address Defendants' arguments that the Village is statutorily immune from liability with respect to Counts Two, Three and Four.  Thus, this issue is unopposed.

22

Ohio's Political Subdivision Tort Liability Act, codified in Ohio Rev. Code Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability for injury or loss to property.  *See Rankin v. Cuyahoga County Dept of Children and Family Services*, 118 Ohio St.3d 392, 394 (2008).  The first tier of the analysis provides that political subdivisions are generally not liable in damages for causing personal injuries.  Revised Code § 2744.02(A)(1) provides that:

> (A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death or loss to person or property allegedly caused by an act or omission of the political subdivision in connection with a governmental or proprietary function.

Ohio Rev. Code § 2744.02(A)(1).  Thus, in determining whether the Village is entitled to immunity under this section, the Court must first determine whether the Village (1) is a "political subdivision" as defined in Ohio Rev. Code § 2744.01(F), and (2) was engaged in a "governmental or proprietary function" when the alleged tort(s) occurred. *See* Ohio Rev. Code § 2744.01(F) and 2977.02(A)(1).

As noted above, Plaintiffs do not oppose Defendants' arguments regarding dismissal of their state law claims.  Thus, there is no dispute either that the Village is a "political subdivision" within the meaning of § 2744.01(F), or that it was performing a "governmental function" at all times relevant to the Complaint under § 2744.01(C).  Accordingly, and in the absence of any meaningful objection, the Court finds the Village is entitled to immunity under § 2744.02(A)(1) under the first tier of the political subdivision immunity analysis.

Once immunity is established, the second tier of the analysis asks whether any of the five

23

exceptions to immunity set forth in § 2744.02(B) apply. These exceptions occur when: (1) the injuries are caused by the negligent operation of a motor vehicle; (2) the injuries are caused by the negligent performance of a proprietary function; (3) the injuries are caused by the failure to keep public roads, highways and streets open, in repair and free from nuisance; (4) the injuries are caused by negligence on the grounds of a building used for governmental purposes; or (5) the injuries are those for which liability is expressly imposed by the Ohio Revised Code. *See* Ohio Rev. Code § 2744.02(B). If any of the exceptions are applicable, then, under the third step in the analysis, the political subdivision has the burden of demonstrating that any of the defenses set forth in § 2744.03 apply. *See Rankin*, 118 Ohio St.3d at 396.

Defendants argue that none of these exceptions are applicable, and Plaintiffs do not argue to the contrary. Upon review, the Court finds none of the five exceptions to immunity set forth above apply. Therefore, and in the absence of any meaningful opposition from Plaintiffs, the Court finds the Village is entitled to absolute immunity from Counts Two, Three and Four as a matter of law.[9]

Defendants also maintain Defendant Superak is entitled to political subdivision employee immunity under Ohio Rev. Code § 2744.03(A)(6). As the Ohio Supreme Court has explained:

> For the individual employees of political subdivisions, the analysis of immunity differs. Instead of the three-tiered analysis . . . , R.C. 2744.03(A)(6) states that an employee is immune from liability unless the

---

[9] To the extent Plaintiffs' state law claims can be construed as asserting any intentional tort claims, Ohio courts have consistently held that political subdivisions are immune from such claims. *See e.g. Wilson v. Stark Cty Dept of Human Services*, 70 Ohio St.3d 450, 452 (1994); *Ziegler v. Mahoning Cty Sheriff's Dept*, 137 Ohio App. 3d 831, 836 (Ohio App. 7th Dist. 2000); *Sabulsky v. Trumbull County*, 2002 WL 31886686 at * 2 (Ohio App. 11th Dist. Dec. 27, 2002). Accordingly, the Court finds the Village is statutorily immune from any intentional tort claims that may be asserted in the Complaint.

24

> employee's actions or omissions are manifestly outside the scope of
> employment or the employee's official responsibilities; the employee's acts
> or omissions were malicious, in bad faith, or wanton or reckless; or
> liability in expressly imposed upon the employee by a section of the
> Revised Code.

*Rankin*, 118 Ohio St.3d at 398 (quoting *Cramer v. Auglaize*, 113 Ohio St.3d 266, ¶ 17 (2007)).

*See also* Ohio Rev. Code § 2744.03(A)(6).

Defendants maintain that none of the exceptions to employee immunity set forth in § 2744.03(A)(6) apply because (1) Defendant Superak acted within the scope of his employment in assisting in the removal of Mr. Lemon from Plaintiffs' residence; (2) liability is not expressly imposed upon him by any Ohio statute; and (3) Plaintiffs fail to allege any facts supporting their claim that Superak acted maliciously. (Doc. No. 9 at 8-12). Plaintiffs do not oppose Defendants' arguments on this issue.

The Court agrees that Superak is entitled to immunity from Plaintiffs' state law claims under § 2744.03(A)(6). Defendant Superak was clearly acting within the scope of his employment at all times relevant to the Complaint. Plaintiffs have not cited any Ohio statute which expressly imposes liability on Defendant Superak for the alleged conduct at issue. Finally, Plaintiffs have failed to sufficiently allege that Defendant Superak acted maliciously, recklessly, or in bad faith. Accordingly, the Court finds Defendant Superak is entitled to political subdivision employee immunity under § 2744.03(A)(6) with respect to Plaintiffs' state law claims as a matter of law.

Therefore, and for all the reasons set forth above, it is recommended that Plaintiffs' state law claims against Defendants Superak and Holmes be dismissed with prejudice.

### 3.    Conclusion

Accordingly, and for all the reasons set forth above, it is recommended that Defendants Superak and Holmes' Motion to Dismiss (Doc. No. 9) be granted and that Plaintiffs' federal and state law claims be dismissed with prejudice.

### B.    HV Defendants' Motion to Dismiss

### 1.    Federal Claims

In Count One of the Complaint, Plaintiffs allege the HV Defendants are liable under § 1983 for depriving them of their "right to enjoy the presence of their father and care for their father during his end of life" in violation of the Fifth, Eighth, and Fourteenth Amendments. (Doc. No. 1 at ¶ 19.)   Specifically, they assert the HV Defendants (along with the APS Defendants and Defendants Superak and Holmes) wrongfully and without legal authority "organized the removal of William T.  Lemon from his family." (Doc. No. 1 at ¶¶ 11, 13, 18.)

In their Motion to Dismiss, the HV Defendants argue they are private parties and, therefore, not subject to liability under § 1983 as a matter of law. (Doc. No. 6-1 at 4.)  As an initial matter, they note that the Complaint expressly acknowledges that Hospice of the Valley is a non-profit organization and refers to the HV Defendants throughout as "non-governmental actors." (Doc. No. 1 at ¶¶ 7, 8, 19.)  They maintain Plaintiffs' bare allegation that the HV Defendants assisted in the removal of Mr. Lemon from Plaintiffs' residence is legally insufficient to state a claim that the HV Defendants acted under "color of state law" for purposes of § 1983.  (Doc. No. 6-1 at 3-5.)

Plaintiffs maintain that the Complaint "alleges sufficient facts to establish the connection, link, or tie necessary to cause Hospice and its employees to be deemed state actors for the

26

purpose of this action." (Doc. No. 19 at 2.)  They argue, summarily, the allegation that the HV

Defendants assisted in organizing and effecting the removal of Mr. Lemon "is enough to create a

nexus between the conduct of the governmental defendants, and Hospice and its employees."

(Doc. No. 19 at 2.)

To hold a private party liable under § 1983, a plaintiff must prove that the actor "deprived

him of a guaranteed right under color of [state law], and ... that [his] actions were properly

attributable to the state, i.e. that [he] qualified as a state actor." *Kelm v. Hyatt*, 44 F.3d 415, 421

(6th Cir.1995) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978)). The Sixth Circuit

uses three tests to determine whether a private party's actions are "fairly attributable" to the

state: (1) the public-function test, (2) the state-compulsion test, and (3) the

symbiotic-relationship or nexus test. *Revis v. Meldrum*, 489 F.3d 273, 289 (6th Cir. 2007) (citing

*Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000)).  The public-function test

"requires that the private entity exercise powers which are traditionally exclusively reserved to

the state."  *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).  The state-compulsion test

requires "proof that the state significantly encouraged or somehow coerced the private party,

either overtly or covertly to take a particular action so that the choice is really that of the state."

*Amer. Postal Workers Union, Local 96 v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004).

The nexus test "requires a sufficiently close relationship between the state and the private actor

so that the action taken may be attributed to the state." *Id*.

Plaintiffs herein do not argue that the HV Defendants constitute state actors under either

the public function or state compulsion tests. Rather, Plaintiffs rely on the "nexus" test to

establish liability under § 1983, arguing that the HV Defendants' "active participation" in the

27

removal of Mr. Lemon from Plaintiffs' residence, in and of itself, is enough to demonstrate a "sufficiently close relationship between the state and the [HV Defendants] so that the action taken many be attributed to the state." (Doc. No. 19 at 2.)

Under the nexus test, "it must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of Section 1983." *Wolotsky*, 960 F.2d at 1335.  "Mere cooperation [between a private actor and the state] does not rise to the level of merger required for finding state action." *Lansing*, 202 F.3d at 831.  To the contrary, in order to satisfy the nexus test, "the ties between the private party and the state must be substantial." *Jackim v. City of Brooklyn*, 2007 WL 893868 at * 24 (N.D. Ohio March 22, 2007).

Here, Plaintiffs fail to sufficiently allege that the HV Defendants constitute "state actors" for purposes of § 1983.  With regard to the HV Defendants' role in this incident, the Complaint alleges only that the HV Defendants (along with the APS Defendants and Defendants Superak and Holmes) "organized the removal of William T. Lemon from his family." (Doc. No. 1 at ¶ 13.)  The Complaint does not explain what the term "organizing the removal" means in this context, and there are no further factual allegations describing the HV Defendants' alleged role in the investigation and removal of Mr. Lemon from Plaintiffs' residence.  Moreover, the Complaint does not explain how or why the HV Defendants became involved in this incident, and does not include any allegations describing the relationship between the HV Defendants and either the APS or Village of McDonald Defendants.

The mere fact that the HV Defendants played an unidentified role in the events relating to Mr. Lemon is insufficient to establish that they functioned as "state actors."  Even viewing the

28

Complaint in a light most favorable to Plaintiffs, the allegations are simply too attenuated to state a plausible claim under § 1983 as to these Defendants.

Accordingly, it is recommended that Plaintiffs' federal claims (i.e. Counts One and Five) against Defendant Hospice of the Valley, Phillips and Makosky be dismissed with prejudice.

### 2.    State Law Claims

Finally, the HV Defendants seek dismissal of Plaintiffs' state law claims for tortious interference with rights of inheritance (Count Two), tortious interference with child-parent relationship (Count Three), and breach of fiduciary relationship (Count Four).  (Doc. No. 6-1 at 6-12.)  In their Motion, the HV Defendants discuss the elements of each of these claims, compare the elements to the allegations in the Complaint, and argue that Plaintiffs have failed to state claims under any of the state law theories.

While Plaintiffs' Brief in Opposition discusses the federal claims asserted in this action, it does not address any of the HV Defendants' arguments regarding the state law claims. (Doc. No. 19.)  Thus, this part of the HV Defendants' motion is unopposed.

### a.    Tortious Interference with Rights of Inheritance (Count Two)

In Count Two, Plaintiffs allege that "[t]hrough the actions of the government and non-governmental actions of Defendant's [sic], William T. Lemon was placed into a position where has was promptly financially exploited prior to his death." (Doc. No. 1 at ¶ 22.)  The sole allegation in support of this claim is as follows: "The actions of all defendant's and their agents interfered with the right of the family to be secure that their father would not be financially exploited and caused to change his beneficiaries of his will and the gifting of other property both to a non-family member who exerted undue influence." (Doc. No. 1 at ¶ 23.)

The Ohio Supreme Court set forth the elements of an intentional interference with expectancy of inheritance claim as follows:

> (1) an existence of an expectancy of inheritance in the plaintiff; (2) an intentional interference by a defendant(s) with that expectancy of inheritance; (3) conduct by the defendant involving the interference which is tortious, such as fraud, duress or undue influence, in nature; (4) a reasonable certainty that the expectancy of inheritance would have been realized, but for the interference by the defendant; and (5) damage resulting from the interference.

*Firestone v. Galbreath*, 67 Ohio St.3d 87, 88 (1993). *See also Wickline v. Hoyer*, 2012 WL 760779 at * 2 (Ohio App. 10th Dist. March 8, 2012).

The HV Defendants argue the Complaint fails to sufficiently allege that: (1) either Darlene or Felix Wilson had an expectancy of inheritance; (2) any of the HV Defendants intentionally interfered with that expectancy; (3) the HV Defendants engaged in fraud, duress, undue influence or other similar tortious conduct; or (4) a reasonable certainty that Plaintiffs' expectancy of inheritance would have otherwise been realized. Upon careful review of the Complaint, and in the absence of any meaningful argument from the Plaintiffs to the contrary, the Court agrees with the HV Defendants that Plaintiffs have failed to sufficiently allege a plausible claim for tortious interference with rights of inheritance under Ohio law.

Accordingly, it is recommended that Count Two of the Complaint be dismissed with prejudice as to the HV Defendants.

### b.    Tortious Interference with Child/Parent Relationship (Count Three)

In Count Three, Plaintiffs allege that "Defendants negligently interfered with the constitutional rights of a child to be with their parent at the time of his or her death. The loss of this second most important time in a person's life was taken from the Plaintiffs." (Doc. No. 1 at ¶ 25.)

30

Plaintiffs do not cite any Ohio case law recognizing an independent claim for "tortious interference with adult child/parent relationship."  However, the Ohio Supreme Court has held that adult emancipated children may recover for loss of parental consortium.  *See Rolf v. Tri State Motor Transit Co.*, 91 Ohio St.3d 380 (2001).  The purpose of this claim is to compensate the plaintiff for the enjoyment and companionship lost due to the injury or death of his or her parent. *Id.* at 382.  *See also Martin v. City of Broadview Heights*, 2011 WL 3648103 at * 16 (N.D. Ohio Aug. 18, 2011).

To the extent the Complaint can be construed to assert a claim for loss of parental consortium, the Court finds Plaintiffs have failed to set forth sufficient factual allegations to state a plausible claim for relief.  Plaintiffs do not allege they were deprived of Mr. Lemon's companionship due to his injury or death, as required by Ohio law.  Moreover, while they allege that Mr. Lemon was "wrongfully removed" from their residence, Plaintiffs do not allege they were thereafter deprived of his society and companionship.  Accordingly, and in the absence of any meaningful arguments by Plaintiffs to the contrary, it is recommended that Count Three of the Complaint be dismissed with prejudice with respect to the HV Defendants.

### c.    Breach of Fiduciary Duty (Count Four)

In Count Four, Plaintiffs allege only that "[t]he Defendant owed a duty of care to properly provide for the protection and welfare of Mr. Lemon and did breach such duty of care." (Doc. No. 1 at ¶ 27.)  Plaintiffs further allege that "Defendant's acted wrongfully in their efforts in taking Mr. Lemon from his children, without affording any due process to Plaintiffs." (Doc. No. 1 at ¶ 28.)

To prove a claim for breach of fiduciary duty under Ohio law, the claimant must establish

the following elements: (1) a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately from that failure.  *See Ford v. Brooks*, 2012 WL 760741 at * 2 (Ohio App. 10th Dist. March 8, 2012); *Evans v. Chambers Funeral Homes*, 2008 WL 2766173 at * 3 (Ohio App. 8th Dist. July 17, 2008).  A claim for breach of fiduciary duty is basically a negligence claim requiring a higher standard of care.  *Strock v. Pressnell*, 38 Ohio St.3d 207, 216 (1988). "'A "fiduciary relationship" is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'" *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 282 (1993) (quoting *In re Termination of Emp. of Pratt*, 40 Ohio St.2d 107, 115 (1974)).

The HV Defendants argue that Plaintiffs fail to sufficiently allege that either HV, Phillips or Makosky owed Plaintiffs "a duty of any kind." (Doc. No. 6-1 at 9-10.)  Upon review of the Complaint, and in the absence of any argument from Plaintiffs to the contrary, the Court agrees with the HV Defendants and recommends that Count Four of the Complaint be dismissed with prejudice as to these defendants.

### d.    Negligent Hiring and Training (Count Five)

It is unclear whether Plaintiffs intend to assert Count Five ("Negligent Hiring and Training") against the HV Defendants as a federal or state law claim. To the extent it is asserted as a federal claim, it is recommended that it be dismissed for the reasons set forth in Section IV.B.1 of this Report & Recommendation.

To the extent it is asserted under state law, the Court finds Plaintiffs fail to allege a plausible claim for relief.  "Negligent hiring, retention, and supervision claims under Ohio law require

32

proof of five elements: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee was the proximate cause of the plaintiff's injuries." *Watson v. City of Cleveland*, 2006 WL 2571948 at * 10 (6th Cir. Sept. 8, 2006) (citing *Linder v. Am. Nat'l Ins. Co.*, 155 Ohio App.3d 30 (2003)).

Plaintiffs' sole allegation with respect to this claim is as follows: "Defendant, Hospice of the Valley, either on its own or through its agents, negligently failed to properly train and supervise its employees in the legal means of taking an adult from their home." (Doc. No. 1 at ¶ 31.)  The HV Defendants argue the Complaint fails to sufficiently allege that: (1) Phillips or Makosky were incompetent with respect to the removal of Mr. Lemon; (2) HV had actual or constructive knowledge of Phillips' and/or Makosky's alleged incompetence; or (3) that HV's hiring, retention, and/or failure to train and supervise Phillips and Maksoky proximately caused their injuries. (Doc. No. 6-1 at 11.)  As noted above, Plaintiffs do not address the HV Defendants' arguments on this issue.

Upon review of the Complaint, and in the absence of any argument from Plaintiffs to the contrary, the Court agrees with the HV Defendants that, to the extent the Complaint states a state law claim for negligent hiring and training, Plaintiffs have failed to sufficiently allege a plausible claim for relief.  Accordingly, it is recommended that Count Five of the Complaint be dismissed with prejudice as to these Defendants.

**3.    Conclusion**

33

Accordingly, and for all the reasons set forth above, it is recommended that the HV Defendants' Motion to Dismiss (Doc. No. 6) be granted and that Plaintiffs' federal and state law claims be dismissed with prejudice.

### V.  Conclusion

For the foregoing reasons, it is recommended that: (1) the Motion to Dismiss of Defendants Dan Superak and Village of McDonald Mayor Glenn W. Holmes (Doc. No. 9) be GRANTED, and (2) the Motion to Dismiss of Defendants Hospice of the Valley, Cindy Phillips and Judith Makosky (Doc. No. 6) be GRANTED. It is further recommended that Plaintiffs' federal and state law claims against these Defendants be dismissed with prejudice.


s/ Greg White
United States Magistrate Judge

Date: June 18, 2013


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

34