**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FELIX WILSON, *et al.*, | ) | CASE NO. 4:12CV2163 |
| | ) | |
| Plaintiffs, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| TRUMBULL COUNTY DEPARTMENT | ) | |
| OF JOB AND FAMILY SERVICES, | ) | |
| *et al.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

On August 1, 2013, this matter was referred pursuant to Local Rule 72.1 (Doc. No. 27), for

consideration of the Motion for Judgment on the Pleadings of Defendants Trumbull County

Department of Job and Family Services Adult Protective Services, Andrea Crook, Anthony

Laprocina, Daniel E. Polivka, Paul E. Heltzel, and Frank S. Fuda. (Doc. No. 25).   For the

following reasons the Court recommends the Motion be granted.

**I.  Procedural Background**

On August 23, 2012, Plaintiffs Darlene Wilson and Felix Wilson (hereinafter "Plaintiffs")

filed a Complaint against the Trumbull County Department of Job and Family Services Adult

Protective Services (hereinafter "APS"); APS employees Andrea Crook and Anthony Laprocina,

in both their official and individual capacities; Trumbull County Commissioners Daniel Polivka,

Paul Heltzel, and Frank Fuda; Hospice of the Valley (hereinafter "HV"); HV employees Cindy

Phillips and Judith Makosky, in both their official and individual capacities; Village of

McDonald, Ohio Mayor Glenn W. Holmes, in his official capacity; and, Village of McDonald

Police Officer Dan Superak, in both his official and individual capacities.

The Complaint asserts the following causes of action: (1) violation of Plaintiffs' civil rights

pursuant to 42 U.S.C. § 1983 based on the Fifth, Eighth, and Fourteenth Amendments to the

United States Constitution; (2) tortious interference with rights of inheritance; (3) tortious

interference with child-parent relationship; (4) breach of fiduciary responsibility; and, (5)

negligent hiring and training. Plaintiffs seek general, compensatory, and punitive damages.

(Doc. No. 1).

On November 2, 2012, Defendants HV, Phillips and Makosky (hereinafter "the HV

Defendants") filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 6.)

Shortly thereafter, Defendants Superak and Holmes also filed a Motion to Dismiss pursuant to

Fed. R. Civ. P. 12(b)(6). (Doc. No. 9.) Plaintiffs filed Briefs in Opposition to both Motions and

Defendants filed Reply Briefs. (Doc. Nos. 13, 18, 19, 20.) On June 18, 2013, this Court issued

a Report & Recommendation that these Defendants' Motions be granted. (Doc. No. 24.) No

objections were filed, and the Report & Recommendation was adopted on July 17, 2013. (Doc.

No. 26.)

On June 18, 2013, Defendants APS, Crook, Laprocina, Polivka, Heltzel and Fuda

(hereinafter "the County Defendants") filed a Motion for Judgment on the Pleadings pursuant to

Fed. R. Civ. P. 12(c). (Doc. No. 25.) Plaintiffs did not file a Brief in Opposition. On August 1,

2013, the Motion was referred to this Court for a Report & Recommendation. (Doc. No. 27.)

2

## II.  Factual Allegations

The Complaint contains the following allegations:

Plaintiff Darlene Wilson is the daughter of William T. Lemon. (Compl. ¶ 2.)  Plaintiff Felix Wilson is Mr. Lemon's son-in-law.  (Compl. ¶ 2.)  In July 2010, Mr. Lemon was hospitalized and told he would require extended care.  (Compl. ¶ 12.)  At this time, he suffered from "end-stage disease, severe COPD, chronic respiratory failure, probably superimposed pneumonia as well as advanced dementia."  (Compl. ¶ 15.)  Mr. Lemon was seventy-nine years old.  (Compl. ¶ 2.)

On July 19, 2010, Darlene Wilson spoke to a Dr. Chaves, who informed her that Mr. Lemon's prognosis was very poor.  (Compl. ¶ 16.)   Ms. Wilson was aware that her father was not going to survive long and needed to be made comfortable.  (Compl. ¶ 16.)  Plaintiffs arranged for Mr. Lemon to move into their residence for the final days of his life, and allege that they took good care of him at all times relevant to the Complaint.  (Compl. ¶¶ 12, 17.)

On September 20, 2010, Defendant APS (through Defendants Crook and Laprocina), the HV Defendants, and Defendants Superak and Holmes "organized the removal of" Mr. Lemon from Plaintiffs' residence.  (Compl. ¶ 13.)  Plaintiffs allege that neither Defendants Crook or Superak were competent to make a determination as to whether Mr. Lemon had "significant dementia" or whether he had the ability to express his intentions about his care. (Compl. ¶ 14.) They assert that Defendants wrongfully and forcibly removed Mr. Lemon from the Plaintiffs' residence and "promptly turned him over to a 'friend,' Jean White, who changed his will and Power of Attorney, all while Mr. Lemon was not competent." (Compl. ¶ 18.)  Plaintiffs further allege that Defendants did not have permission from the Trumbull County Probate Court to "take

3

possession of" Mr. Lemon. (Compl. ¶ 11.)

### III. Standard of Review

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (*quoting in part Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (*quoting in part Twombly*, 550 U.S. at 555-556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a

4

claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (*quoting in part Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (*quoting Twombly*, 127 S.Ct. at 1964).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### IV.  Law and Analysis

#### A.    Defendant APS is not *sui juris*

Defendants first maintain that Trumbull County APS should be dismissed because it is not *sui juris* and, therefore, lacks the capacity to be sued.  (Doc. No. 25 at 10.)  As Plaintiffs did not file a Brief in Opposition, this argument is unopposed.

The question of whether or not an entity such as a county agency has the capacity to be sued is governed by the law of the state in which the district court sits.  *See* Fed. R. Civ. P. 17(b); *Lowe v. Hamilton County Dep't of Job & Family Servs*., 2008 WL 816669 at * 2 (S.D. Ohio March 26, 2008).  Under Ohio law, a county may be sued when it has adopted a charter or alternative form of government, *see* Ohio Rev. Code § 301.22, or through its board of

5

commissioners, *see* Ohio Rev. Code § 305.12.  *See Black v. Hamilton County Public Defender Commission*, 2013 WL 684394 at * 4 (S.D. Ohio Feb. 25, 2013) (citing *Williams v. Warren County, Ohio*, 2011 WL 1980015, at *7 (S.D. Ohio Mar. 4, 2011) *adopted by Williams v. Warren County*, 2011 WL 1980204 (S.D. Ohio May 20, 2011)).  Interpreting these provisions, numerous district courts have found that counties and county agencies are not *sui juris*, and that suit must be brought against the commissioners for a county's alleged violation of an individual's rights.  *See e.g.  Marin v. Cleveland Clinic*, 2010 WL 359699 at * 4 (N.D. Ohio Jan. 29, 2010) (finding Cuyahoga County Job and Family Services is not *sui juris* and that "[c]ounties may be held accountable through their elected representatives; i.e. their commissioners"); *Lowe*, 2008 WL 816669, at *2 (finding Hamilton County Job and Family Services is not *sui juris*); *Black*, 2013 WL 684394 at * 4 (finding that Hamilton County is not *sui juris*).

In light of the above, the Court finds Defendant Trumbull County APS is not *sui juris* and lacks the capacity to be sued.  Thus, the Court recommends Plaintiffs' claims against this Defendant be dismissed.  Plaintiffs have named Trumbull County Commissioners Polivka, Heltzel and Fuda as defendants and the Court will construe their claims against the County as against these Defendants.

### B.    Federal Claims

Plaintiffs allege the following federal claims against the County Defendants pursuant to 42 U.S.C. § 1983.  In Count One, Plaintiffs allege Defendants deprived them of their constitutional right to "enjoy the presence of their father and care for their father during the end of life," in violation of the Fifth, Eighth, and Fourteenth Amendments. (Doc. No. 1 at ¶ 19.)   In Count Five, Plaintiffs allege municipal liability on the basis that "Trumbull County, either on its own or

through its agents, negligently failed to hire, properly train and supervise its employees in the proper legal means of taking an adult from their home." (Doc. No. 1 at ¶ 30.)[1]

The Court will first address Plaintiffs' federal claims as asserted against Defendants Crook and Laprocina in their individual capacities.  The Court will then consider Plaintiffs' official capacity federal claims, as construed against Trumbull County.

### 1.       Defendants Crook and Laprocina– Individual Capacity Claims

To establish a claim under § 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Simescu v. Emmet County Dep't of Soc. Services*, 942 F.2d 372, 374 (6ᵗʰ Cir. 1991).  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979).  The first step in any such claim is to identify the specific constitutional right allegedly infringed.  *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Baker*, 443 U.S. at 140.

Here, Plaintiffs allege that Defendants Crook and Laprocina wrongfully "organized the removal of William T. Lemon from his family." (Doc. No. 1 at ¶ 13.)  They assert Defendant Crook was "not competent to make a determination as to whether Mr. Lemon had the ability to express his intentions and not competent to recognize that a person has significant dementia." (Doc. No. 1 at ¶¶ 14.)  Plaintiffs claim these Defendants "wrongfully took Mr. Lemon, without any authority, and promptly turned him over to a 'friend,' Jean White, who changed his will and

---

[1]        Count Five does not specifically reference § 1983 as the basis for Plaintiffs' failure to train/supervise claim.   However, giving Plaintiffs the benefit of the doubt, the Court will liberally construe the Complaint as asserting this claim as a federal constitutional claim.

7

Power of Attorney, all while Mr. Lemon was not competent." (Doc. No. 1 at ¶ 18.)  Based on

these allegations, Plaintiffs claim Defendants Crook and Laprocina "deprived Plaintiffs of their

right to enjoy the presence of their father and care for their father during his end of life," in

violation of the Fifth, Eighth, and Fourteenth Amendments.  (Doc. No. 1 at ¶ 19.)

     Defendants argue this claim should be dismissed because, as a matter of law, an adult child

does not have a constitutionally protected right of companionship with his or her parent.  (Doc.

No. 25 at 11 - 13.)  They further argue that, even if the Court were to recognize such a

constitutional right, Defendants Crook and Laprocina are entitled to qualified immunity because

Plaintiffs cannot demonstrate this right was clearly established at the time Mr. Lemon was

removed from Plaintiffs' home.[2]  (Doc. No. 25 at 13-15.)

     The Court expressly addressed this issue in its June 18, 2013 Report & Recommendation

granting the Motions to Dismiss of Defendant Police Officer Superak and the Village of

McDonald.  (Doc. No. 24 at 9-14.)  Therein, the Court reasoned as follows:

> Here, Plaintiffs claim that, "[b]y entering the Wilson's house and removing
> Lemon without valid legal authority," Defendant Superak "directly interfered
> with the Wilson's right to make important family decisions," thereby violating
> their due process right to familial association. (Doc. No. 13 at 5.)  They assert the
> Complaint states plausible claims under both the First and Fourteenth
> Amendments based on "[a]llegations that Superak . . . without any legal authority
> came to a daughter's and son-in-law's house and removed an elderly, terminally
> ill father suffering from advanced dementia." (Doc. No. 13 at 6.)
>
> Defendant Superak first argues this claim should be dismissed because, as a
> matter of law, an adult child does not have a constitutionally protected right of
> companionship with his or her parent.  (Doc. No. 9 at 4-6.)  He further argues

---

[2] Defendants also argue Plaintiffs lack standing to bring their federal claims because "to
the extent that Mr. Lemon was indeed improperly removed from the home, any constitutional
deprivation would be his alone." (Doc. No. 25 at 11.)  The Court finds it need not reach this
argument in order to resolve Defendants' motion.

8

that, even if the Court were to recognize such a constitutional right, he is entitled to qualified immunity because Plaintiffs cannot demonstrate this right was clearly established at the time of the removal of Mr. Lemon from Plaintiffs' home.  (Doc. No. 9 at 7-8.)

Qualified immunity protects public officials from liability for civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Sixth Circuit follows a "two-tiered inquiry" to determine if an officer is entitled to qualified immunity.  *Austin v. Redford Twp. Police Dept*., 690 F.3d 490, 496 (6th Cir. 2012).  *See also Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  The first step is to determine if the facts alleged make out a violation of a constitutional right.  *Pearson*, 555 U.S. at 232.  The second is to ask if the right at issue was "clearly established" when the event occurred such that a reasonable officer would have known that his conduct violated it.  *Id.  See also Martin*, 712 F.3d at 957.  The Supreme Court has explained that these two steps may be addressed in any order.  *Pearson*, 555 U.S. at 236.  "But both must be answered in the affirmative for the case to go to a factfinder to decide if each officer's conduct in the particular circumstances violated a plaintiff's clearly established constitutional rights." *Martin*, 712 F.3d at 957.  If either one is not satisfied, qualified immunity will shield the officer from civil damages. *Id.  See also Pearson*, 555 U.S. at 236.

As it is dispositive of the issue, the Court will address the second tier of the inquiry first; i.e. whether Plaintiffs' alleged right to familial association with Mr. Lemon was "clearly established" at the time of his removal from Plaintiffs' home in September 2010.  For the following reasons, the Court finds that it was not.

The Sixth Circuit has explained that, in the context of qualified immunity, "[t]he sources of clearly established law to be considered are limited." *Martin*, 712 F.3d at 961.  This Court should "'look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within our circuit, and finally to decisions of other circuits.'" *Id*. (quoting *Champion v. Outlook Nashville, Inc*., 380 F.3d 893, 902 (6th Cir. 2004)).  Here, Plaintiffs fail to cite any binding authority from either the United States Supreme Court or the Sixth Circuit suggesting that adult children have a constitutionally protected right of familial association with their parent.[3]  Moreover, at least one district court from

---

[3]      Plaintiffs' reliance on the Sixth Circuit's decision in *Smith v. Williams-Ash*, 520 F.3d 596 (6th Cir. 2008) is misplaced.  In *Smith*, parents sued a social worker after their *minor* children were removed from their home.  *Id*. at 598-599.  While this decision recognized the general principle that the parent-child relationship gives rise to a liberty interest under the

within this Circuit has dismissed § 1983 claims premised on the violation of such a right.  In *Kyle v. Sims*, 2007 WL 2463312 (E.D. Mich. Aug. 30, 2007), the plaintiff, an adult, alleged that a Protective Services Worker employed by the State of Michigan violated her constitutional rights when she "defrauded, intimidated, and gave legal advice [to plaintiff's mother] to revoke Plaintiff's Power of Attorney."  *Id*. at * 2-3.  Defendant moved to dismiss on the basis of qualified immunity.  The district court first found that "[w]hile it is understandable that Plaintiff would like to continue her relationship with her elderly mother, such a relationship is neither a Constitutional Right nor one secured by the laws of the United States under the First or Fourth Amendment." *Id*. at * 4.  With regard to plaintiff's due process claim under the Fourteenth Amendment, the district court noted that neither the Supreme Court or the Sixth Circuit had recognized that the relationship of an adult child with an elderly parent is a clearly established constitutional right.  *Id*. at * 5.  Although it conjectured that the Sixth Circuit would likely recognize such a right under the Fourteenth Amendment, the court concluded that defendant was nevertheless entitled to qualified immunity because "Plaintiff failed to demonstrate that at the time Defendant committed the challenged acts, this right was clearly established in the Sixth Circuit– either the liberty interest in an adult child's relation with a parent or in any predeprivation process related to such a right." *Id.* at * 7.

Thus, **looking first to decisions of the Supreme Court, the Sixth Circuit, and decisions from other courts within the Sixth Circuit, the Court finds that a constitutional right to familial association between an adult child and his or her parent was not clearly established at the time Mr. Lemon was removed from Plaintiffs' residence.  Moreover, even if the Court were to consider decisions of the other Circuit Courts of Appeals, it cannot be said that the existence of such a right was clearly established.**  As Defendants correctly note, other Circuit Courts of Appeals that have considered whether a constitutional right of familial association exists between adult children and their parents are split on the issue.  While the Ninth and Tenth Circuits appear to have recognized this constitutional right under certain circumstances, the Seventh, Eleventh and D.C. Circuits have declined to do so.  *Compare Lee v. City of Los Angeles*, 250 F.3d 668, 685-686 (9th Cir. 2001) (recognizing constitutional rights of mentally disabled adult child and his mother to familial association under the First and Fourteenth Amendments) and *Trujillo v. Bd. of County Comm'rs*, 768 F.2d 1186, 1188-1189 (10th Cir. 1985) (recognizing parent's constitutionally protected interest in right of intimate association with her adult son); *with Robertson v. Hecksel*, 420 F.3d 1254, 1259-1260 (11th Cir. 2005) (holding Fourteenth Amendment's substantive due process protections do not extend to the

_____

Fourteenth Amendment, *id.* at 599, it did not address the question of whether a constitutional right of familial association exists between an *adult* child and his or her parent.

relationship between a mother and her adult son); *Russ v. Watts*, 414 F.3d 783, (7th Cir. 2005) (holding parents had no constitutional right under the due process clause to recover for loss of society and companionship of adult son); *Butera v. District of Columbia*, 235 F.3d 637, 656, n. 23 (D.C. Cir. 2001) (holding that "a parent-child relationship between two independent adults does not invoke constitutional 'companionship' interests").

Plaintiffs argue that the *Russ* and *Robertson* decisions from the Seventh and Eleventh Circuits, respectively, finding no constitutional right of familial association are distinguishable from the instant case because they involved claims of "indirect interference with the parent-child relationship." (Doc. No. 13 at 3, fn 1.) Plaintiffs maintain that their constitutional claims allege "direct interference" with their relationship with Mr. Lemon, and argue "[n]o court has held that there is no constitutionally protected right to familial association between an adult child and his or her parent when direct interference is alleged." *Id.*

Plaintiffs' argument is unavailing, however, because that is not the test for determining whether a constitutional right is "clearly established" for purposes of qualified immunity. As the Sixth Circuit recently explained, in order to be clearly established, "the right's contours must be 'sufficiently clear' to show that 'a reasonable official would understand that what he is doing violates that right.'" *Martin*, 712 F.3d at 960 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In this context, it is immaterial whether any Circuit Court of Appeals has explicitly found that there is no constitutional right of familial association where direct interference is alleged. Rather, the Court must look to whether there is precedent from which a reasonable officer would understand that his conduct amounted to a constitutional violation. In light of the lack of binding precedent in this Circuit and the division among the other Circuits on this issue, it cannot be said that a reasonable officer in Defendant Superak's position would understand that participating in the APS investigation and removal of Mr. Lemon from Plaintiffs' residence violated Plaintiffs' constitutional right of familial association.

Accordingly, **the Court finds Plaintiffs have not established that they had a clearly established right of familial association with Mr.  Lemon under the circumstances presented herein, regardless of whether their claim is made under the First, Fifth, Eighth or Fourteenth Amendments.** Therefore, it is recommended that Count One against Defendant Superak in his individual capacity be dismissed with prejudice.

(Doc. No. 25 at 9-14)(emphasis added).  No objections were filed, and the Court's Report &

Recommendation was adopted on July 17, 2013.  (Doc. No. 26.)

As noted above, Plaintiffs have not filed a Brief in Opposition to the County Defendants' Motion for Judgment on the Pleadings, or otherwise directed this Court's attention to any intervening case law or argument that might compel a different conclusion than that set forth above.  Accordingly, and for the reasons set forth in its analysis of this issue in the June 18, 2013 Report & Recommendation, the Court finds Plaintiffs' alleged right to familial association with Mr. Lemon was not "clearly established" at the time of his removal from Plaintiffs' home in September 2010.  Therefore, it is recommended that Count One against Defendants Crook and Laprocina in their individual capacities be dismissed with prejudice.[4]

### 2.    Trumbull County

Plaintiffs also assert federal claims against Defendants Crook and Laprocina in their official capacities as employees of the Trumbull County APS.  In addition, the Complaint alleges federal

---

[4]  The Court recognizes the Sixth Circuit recently appeared to recognize a Fourteenth Amendment due process right to familial association as existing between a developmentally disabled adult child and her parents.  *See Kolley v. Adult Protective Services*, 725 F.3d 581 (6th Cir. Aug. 5, 2013).  In that case, an investigation by the defendant Adult Protective Services ensued after Jena Kolley (a developmentally disabled 19 year old with the  communication skills of a child between the ages of five and seven) told her teachers that her mother hit her.  *Id*. at 583. As a result of this investigation, Ms. Kolley was removed from her family's home and placed in a group foster facility. *Id*. at 584. Several months later, Ms. Kolley was removed from foster care and placed in her father's home.  *Id*.  The Kolleys subsequently filed suit, alleging claims under § 1983 that defendants had deprived them of their right to familial association and parental liberty interests in violation of the First and Fourteenth Amendments. *Id.* at 585.  While the Sixth Circuit appeared to recognize the existence of such a right under the Fourteenth Amendment, it found no violation of either the Kolleys' substantive or procedural due process rights under the circumstances of that case.  *Id*. at 585-587.  Although the Sixth Circuit has now appeared to recognize the right to familial association in the context of a developmentally disabled adult child and her parents, it does not change the fact that the existence and contours of this right were not clearly established in September 2010 when Mr. Lemon was removed from his home.  Thus, the *Kolley* decision does not change this Court's recommendation that Count One against Defendants Crook and Laprocina in their individual capacities should be dismissed on the basis of qualified immunity.

12

claims against Defendants Polivka, Heltzel and Fuda in their official capacities as Trumbull County Commissioners.[5]

It is well-established that a suit against a person in his official capacity is construed as a suit against the governmental entity which he represents. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("While '[p]ersonal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent")(quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Thus, Plaintiffs' official capacity claims against Defendants Crook, Laprocina, Polivka, Heltzel and Fuda are construed against Trumbull County.

As the Sixth Circuit has explained, "[t]he question of whether a municipality is liable under § 1983 has two parts: '(1) whether [the] plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation.'"  *Lee v. Metropolitan Government of Nashville and Davidson County*, 2011 WL 2882227 at * 12 (6th Cir. July 18, 2011) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992)).[6]  Under the first part of this

_____

[5]  The Complaint asserts that Defendants Polivka, Heltzel and Fuda "in their professional capacity are responsible for hiring and appointments to the Trumbull County Department of Job and Family Services, APS, authorizes levies for funding of Trumbull County Department of Jobs and Family Services, APS and have other general oversite and control of Trumbull County Department of Jobs and Family Services, APS as a related Trumbull County entity."  (Doc. No. 1 at ¶ 6.)  The Court interprets this allegation as asserting official capacity claims against these Defendants.  There is no indication Plaintiffs are asserting individual capacity claims against Defendants Polivka, Heltzel and/or Fuda.

[6]  The County may not assert a qualified immunity defense against Plaintiffs' federal claims. *See Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005)("The qualified immunity defense is not available to municipalities or to persons acting on behalf of municipalities . . . when sued in their official capacity only"); *Martin v. City of Broadview Heights*, 2011 WL 3648103 at * 8 (N.D. Ohio Aug. 18, 2011) ("The City, as a municipality, may not assert a qualified immunity

inquiry, a municipality cannot be held liable under § 1983 "based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  *See also Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007)("In fact, because the jury found no constitutional violation . . . the county could not have been found liable . . . for an allegedly unconstitutional custom or policy"); *Ewolski v. City of Brunswick*, 287 F.3d 492, 516 (6th Cir. 2002) ("Where, as here, a municipality's liability is alleged on the basis of the unconstitutional actions of its employees, it is necessary to show that the employees inflicted a constitutional harm").

Here, Count One is premised on the claim that Defendants Crook and Laprocina violated Plaintiffs' constitutional right of familial association with Mr. Lemon.  As set forth above, neither the Supreme Court nor the Sixth Circuit has recognized the existence of such a constitutional right in this particular context and the Court has concluded, *supra*, that these Defendants are entitled to qualified immunity on the grounds that Plaintiffs have failed to establish the violation of a "clearly established" constitutional right.  Thus, it is questionable whether Plaintiffs have satisfied the first tier of the inquiry for establishing municipal liability under § 1983.  *Lee*, 2011 WL 2882227 at * 12.

Even assuming Plaintiffs have demonstrated an underlying constitutional violation, they must still demonstrate that the County is responsible for that violation.  A municipality, however, may only be held responsible for a constitutional violation based on § 1983 where its "official policy or custom actually serves to deprive an individual of his or her constitutional rights." *Gregory v. City of Louisville*, 444 F.3d 725, 752-53 (6th Cir. 2006).  The Sixth Circuit recently

_____

defense against Plaintiffs' federal claims").

explained the contours of municipal liability as follows:

> The Supreme Court has approved municipal liability based on § 1983 when "the [municipal] action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or where such actions emanate from informal governmental custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In other words, the constitutional violation must have sprung from "official policy" in one form or another. *Id.* at 694, 98 S.Ct. 2018. As such, local government units cannot be held liable mechanically for their employees' actions under a respondeat superior theory. *Id.* at 691, 98 S.Ct. 2018. The plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bryan Cnty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). He "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

*Alman v. Reed*, 703 F.3d 887, 902-903 (6th Cir. 2013). *See also Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) ("[T]o satisfy the *Monell* requirements, a plaintiff must identify the policy, connect the policy to the [government entity] itself and show that the particular injury was incurred because of the execution of that policy").

Here, Plaintiffs have not identified any policy or custom connected to the County itself that resulted in their alleged injury. The Complaint states only that "[t]he actions of the government actors were done by decision makers acting under color of law and pursuant to a custom or practice." (Doc. No. 1 at ¶ 20.) Plaintiffs do not identify any particular custom, practice, or policy of the County, much less one that is relevant to the removal of elderly parents from the homes of their adult children. Moreover, Plaintiffs do not plead any factual allegations suggesting that their particular injury was incurred because of the execution of a County policy or custom.

While Plaintiffs do recite the phrase "custom and practice" in the Complaint, such bare legal conclusions are not enough to survive a motion to dismiss under Rule 12(b)(6). *See Twombly*,

555 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. . . . a plaintiff[] [must allege] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do")(internal citations omitted). In the instant case, the Complaint's fleeting reference to an unspecified "custom or practice" does not sufficiently identify a relevant County policy or suggest that Plaintiffs' injury was the result of such a policy.  In light of these pleading deficiencies, the Court finds that Count One of the Complaint cannot be construed as setting forth a "plausible" claim for municipal liability under § 1983.  It is therefore recommended that Plaintiffs' § 1983 official capacity claims against Defendants Crook, Laprocina, Polivka, Heltzel, and Fuda under Count One be dismissed with prejudice.[7]

Plaintiffs also allege § 1983 official capacity claims for failure to properly train, and negligent hiring and retention.  (Doc. No. 1 at ¶ 30.)  As the Supreme Court recently explained, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011).  A municipality can be liable under § 1983 on a failure-to-train theory only when the "failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of*

_____

[7]        The Court recognizes that, in the absence of discovery, civil rights plaintiffs face challenges in pleading the existence of a municipal custom or policy. However, applying the principles set forth in *Twombly* and *Iqbal*, district courts have held that a plaintiff must nevertheless plead sufficient factual allegations to support a claim of municipal liability under § 1983 in order to survive dismissal under Rule 12(b)(6).  *See e.g. Hutchison v. Metro. Gov't of Nashville & Davidson Cnty.*, 685 F.Supp.2d 747, 749 (M.D. Tenn. 2010); *Cunningham v. Cleveland Police Dep't*, 2010 WL 5636778 at * 6 (N.D. Ohio Dec. 22, 2010); *Wooten v. Spigner*, 2011 WL 5075692 (E.D. Mich. Sept. 8, 2011) *adopted by* 2011 WL 5075714 (E.D. Mich. Oct. 25, 2011).  Here, Plaintiffs' perfunctory assertion of an unspecified "custom and practice" is simply insufficient to state a claim for municipal liability under § 1983, lack of discovery notwithstanding.

*Canton v. Harris*, 489 U.S. 378, 388 (1989). This happens in the unusual case where "such inadequate training can justifiably be said to represent 'city policy.' " *Id*. at 390. *See also Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013). The Sixth Circuit has characterized this standard as requiring a plaintiff to prove "three distinct facts": (1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the city's deliberate indifference; and (3) that the inadequacy is "closely related to" or "actually caused" the plaintiff's injury. *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (citing *City of Canton*, 489 U.S. at 390–91). *See also Alman*, 703 F.3d at 903; *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

Here, the Complaint's sole allegation as to this claim is as follows: "Defendant, Trumbull County, either on its own or through its agents, negligently failed to hire, properly train, and supervise its employees in the proper legal means of taking an adult from their home." (Doc. No. 1 at ¶ 30.) No further factual allegations are provided, and Plaintiffs have not filed a Brief in Opposition that might shed further light on this claim.

The Court finds Plaintiffs have failed to state a § 1983 claim against the County for failure to train. The Complaint does not set forth any allegations that the County's training of Crook and/or Laprocina, or lack thereof, rose to the level of deliberate indifference. "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd of Cty Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 410 (1997). *See also Connick*, 131 S.Ct. at 1360. As the Sixth Circuit has explained, deliberate indifference may be shown in either of two ways:

> [First, plaintiff can] 'show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was

17

> clearly on notice that the training in this particular area was deficient and
> likely to cause injury.' In the alternative, 'a single violation of federal rights,
> accompanied by a showing that a municipality has failed to train its
> employees to handle recurring situations presenting an obvious potential for
> such a violation, could trigger municipal liability.'

*Plinton v. Cnty of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Fisher v. Harden*, 398 F.3d

837, 849 (6th Cir. 2005)).  *See also Bryan County*, 520 U.S. at 409; *City of Canton*, 489 U.S. at

390 (finding that a municipality's conduct may constitute deliberate indifference when "in light of

the duties assigned to specific officers or employees the need for more or different training is so

obvious, and the inadequacy [is] . . . likely to result in the violation of constitutional rights").

As an initial matter, the Complaint herein does not contain any allegations regarding the

nature or content of the County's training program, or the manner in which such program is

inadequate in relation to the particular tasks that Defendants Crook and Laprocina performed in

assisting in the removal of Mr. Lemon from Plaintiffs' residence.  Assuming Plaintiffs are

alleging that the County's liability is premised on the failure to conduct any training on this issue,

the Complaint is deficient because it does not allege prior instances of unconstitutional conduct

relating to the investigation or removal of elderly parents from their children's homes, sufficient

to suggest the County should have been on notice of the need for such training.

Moreover, Plaintiffs fail to sufficiently allege that the violation of their constitutional rights

was a highly predictable, or plainly obvious, consequence of the County's failure to train.  As

noted above, when Mr. Lemon was removed from Plaintiffs' residence in September 2010, it was

not clearly established in this Circuit that Plaintiffs enjoyed a constitutional right to familial

association under the circumstances presented herein.  Thus, it cannot be said that it was "highly

predictable" or "plainly obvious" that the County's alleged failure to train on this issue would

18

result in the deprivation of Plaintiffs' constitutional rights.

Nor can such allegations be necessarily inferred from Plaintiffs' assertion that Crook was not competent to evaluate Mr. Lemon and had no legal authority to remove him from Plaintiffs' residence.  (Doc. No. 1 at ¶ 14.)  As the Supreme Court has explained, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390 -391.  Further, "[n]either will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Id.* at 391.  Rather, for liability to attach, "the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id*.  Plaintiffs' allegations that Crook lacked the competence or authority to assist in the removal of Mr. Lemon are not sufficient to demonstrate that an "identified deficiency" in the County's training program was "closely related to" Plaintiffs' alleged injuries.  Even viewing the Complaint as a whole and in a light most favorable to Plaintiffs, the allegations are simply too attenuated to set forth a plausible claim for municipal liability under a failure to train theory.

For similar reasons, the Court finds that Plaintiffs fail to state a § 1983 claim for negligent hiring or retention.  Where a plaintiff seeks to hold a municipality liable for negligently hiring and/or retaining a particular employee, the plaintiff must prove that the decision to hire or retain the employee "reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 411 (1997)).  *See also Stricker v. Township of Cambridge*, 710 F.3d 350, 365 (6th Cir. 2013) ("The standard for municipal liability in negligent hiring, training, and retention is

deliberate indifference"); *Totman v.  Louisville Jefferson County Metro Government*, 2010 WL 3245534 at * 11 (6th Cir. Aug. 13, 2010).  A finding of culpability cannot depend on the general probability that any officer inadequately screened will inflict some injury.  *Totman*, 2010 WL 3245534 at * 11.   "Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff."  *Brown*, 520 U.S. at 411 (emphasis in original).

Again, Plaintiffs plead no factual allegations suggesting that, in hiring and retaining Defendants Crook and/or Laprocina, the County was deliberately indifferent to the risk that they would violate Plaintiffs' constitutional rights.  There are no allegations in the Complaint suggesting that some deficiency in Defendants Crook's or Laprocina's history or background would make it "highly likely" that they would inflict the "particular injury" suffered by Plaintiffs herein; i.e. that Defendants Crook and/or Laprocina, in particular, would inflict a constitutional injury on Plaintiffs through their participation in the removal of Mr. Lemon from Plaintiffs' residence.  In the absence of any factual allegations suggesting deliberate indifference, the Court finds Plaintiffs have failed to state a plausible claim against the County for negligent hiring and/or retention under § 1983.

Accordingly, and for all the reasons set forth above, it is recommended that Plaintiffs' § 1983 official capacity claims against Defendants Crook, Laprocina, Polivka, Heltzel, and Fuda under Count Five be dismissed with prejudice.

## C.    State Law Claims (Counts Two, Three, and Four)

### 1.    Political Subdivision Immunity

Plaintiffs assert state law claims against the County Defendants for (1) tortious interference with rights of inheritance (Count Two); (2) tortious interference with child parent relationship

(Count Three); and (3) breach of fiduciary duty (Count Four).  (Doc. No. 1 at ¶¶ 21-28.)

Defendants maintain the County is a "political subdivision" within the meaning of Ohio Revised

Code § 2744.01(F) and is, therefore, entitled to the immunities provided in Ohio Revised Code

Chapter 2744.  Defendants further assert that none of the exceptions to immunity set forth in Ohio

Rev. Code § 2744.02(B) apply and, therefore, Plaintiffs' state tort claims against the County

should be dismissed.

Ohio's Political Subdivision Tort Liability Act, codified in Ohio Rev. Code Chapter 2744,

sets forth a three-tiered analysis for determining whether a political subdivision is immune from

liability for injury or loss to property.  *See Rankin v. Cuyahoga County Dept of Children and*

*Family Services*, 118 Ohio St.3d 392, 394 (2008).  The first tier of the analysis provides that

political subdivisions are generally not liable in damages for causing personal injuries.  Revised

Code § 2744.02(A)(1) provides that:

> (A)(1) For the purposes of this chapter, the functions of political
> subdivisions are hereby classified as governmental functions and
> proprietary functions. Except as provided in division (B) of this section, a
> political subdivision is not liable in damages in a civil action for injury,
> death or loss to person or property allegedly caused by an act or omission
> of the political subdivision in connection with a governmental or
> proprietary function.

Ohio Rev. Code § 2744.02(A)(1).  Thus, in determining whether the County is entitled to

immunity under this section, the Court must first determine whether it (1) is a "political

subdivision" as defined in Ohio Rev. Code § 2744.01(F), and (2) was engaged in a

"governmental or proprietary function" when the alleged tort(s) occurred. *See* Ohio Rev. Code §

2744.01(F) and 2977.02(A)(1).

Plaintiffs do not oppose Defendants' arguments regarding dismissal of their state law

21

claims. Thus, there is no dispute either that the County is a "political subdivision" within the meaning of § 2744.01(F), or that it was performing a "governmental function" at all times relevant to the Complaint under § 2744.01(C).[8] Accordingly, and in the absence of any meaningful objection, the Court finds the County is entitled to immunity under § 2744.02(A)(1) under the first tier of the political subdivision immunity analysis.

Once immunity is established, the second tier of the analysis asks whether any of the five exceptions to immunity set forth in § 2744.02(B) apply. These exceptions occur when: (1) the injuries are caused by the negligent operation of a motor vehicle; (2) the injuries are caused by the negligent performance of a proprietary function; (3) the injuries are caused by the failure to keep public roads, highways and streets open, in repair and free from nuisance; (4) the injuries are caused by negligence on the grounds of a building used for governmental purposes; or (5) the injuries are those for which liability is expressly imposed by the Ohio Revised Code. *See* Ohio Rev. Code § 2744.02(B). If any of the exceptions are applicable, then, under the third step in the analysis, the political subdivision has the burden of demonstrating that any of the defenses set forth in § 2744.03 apply. *See Rankin*, 118 Ohio St.3d at 396.

Defendants argue that none of these exceptions are applicable, and Plaintiffs do not argue otherwise. Upon review, the Court finds none of the five exceptions to immunity set forth above apply. Therefore, and in the absence of any meaningful opposition from Plaintiffs, the Court finds the County is entitled to absolute immunity from Counts Two, Three and Four as a matter

---

[8] Ohio Rev. Code § 2744.01(C)(2)(m) defines the term "governmental function" to include "[t]he operation of a job and family services department or agency, including, but not limited to, the provision of assistance to aged and infirm persons and to persons who are indigent."

of law.[9]

Defendants also maintain Defendants Crook and Laprocina are entitled to political subdivision employee immunity under Ohio Rev. Code § 2744.03(A)(6).  As the Ohio Supreme Court has explained:

> For the individual employees of political subdivisions, the analysis of immunity differs. Instead of the three-tiered analysis . . . , R.C. 2744.03(A)(6) states that an employee is immune from liability unless the employee's actions or omissions are manifestly outside the scope of employment or the employee's official responsibilities; the employee's acts or omissions were malicious, in bad faith, or wanton or reckless; or liability in expressly imposed upon the employee by a section of the Revised Code.

*Rankin*, 118 Ohio St.3d at 398 (quoting *Cramer v. Auglaize*, 113 Ohio St.3d 266, ¶ 17 (2007)). *See also* Ohio Rev. Code § 2744.03(A)(6).

Defendants maintain that none of the exceptions to employee immunity set forth in § 2744.03(A)(6) apply because (1) Defendants Crook and Laprocina acted within the scope of their employment in assisting in the removal of Mr. Lemon from Plaintiffs' residence; (2) liability is not expressly imposed upon them by any Ohio statute; and (3) Plaintiffs fail to allege any facts supporting their claim that either Crook or Laprocina acted maliciously, in bad faith, or in a wanton or reckless manner.  (Doc. No. 25 at 24- 26.)  Plaintiffs do not oppose Defendants' arguments on this issue.

---

[9]        To the extent Plaintiffs' state law claims can be construed as asserting any intentional tort claims, Ohio courts have consistently held that political subdivisions are immune from such claims.  *See e.g. Wilson v. Stark Cty Dept of Human Services*, 70 Ohio St.3d 450, 452 (1994); *Ziegler v. Mahoning Cty Sheriff's Dept*, 137 Ohio App. 3d 831, 836 (Ohio App. 7th Dist. 2000); *Sabulsky v. Trumbull County*, 2002 WL 31886686 at * 2 (Ohio App. 11th Dist. Dec. 27, 2002).  Accordingly, the Court finds the County is statutorily immune from any intentional tort claims that may be asserted in the Complaint.

The Court agrees that Crook and Laprocina are entitled to immunity from Plaintiffs' state law claims under § 2744.03(A)(6).  These Defendants, at all times relevant to the Complaint, were clearly acting within the scope of their employment.  Plaintiffs have not cited any Ohio statute which expressly imposes liability on either Crook or Laprocina for the alleged conduct at issue.  Finally, Plaintiffs have failed to sufficiently allege that either of these Defendants acted maliciously, recklessly, or in bad faith. Accordingly, the Court finds Defendants Crook and Laprocina are entitled to political subdivision employee immunity under § 2744.03(A)(6) with respect to Plaintiffs' state law claims as a matter of law.

Therefore, and for all the reasons set forth above, it is recommended that Plaintiffs' state law claims against Defendants Crook and Laprocina be dismissed with prejudice.

### 2.    Individual State Law Claims

Even if statutory immunity under Ohio's Political Subdivision Tort Liability Act did not apply, the County Defendants maintain they are entitled to judgment in their favor on Plaintiffs' individual state law claims as a matter of law.   For the following reasons, the Court agrees.

### a.  Tortious Interference with Rights of Inheritance (Count Two)

In Count Two, Plaintiffs allege that "[t]hrough the actions of the government and non-governmental actions of Defendant's [sic], William T. Lemon was placed into a position where has was promptly financially exploited prior to his death." (Doc. No. 1 at ¶ 22.)  The sole allegation in support of this claim is as follows: "The actions of all defendant's and their agents interfered with the right of the family to be secure that their father would not be financially exploited and caused to change his beneficiaries of his will and the gifting of other property both to a non-family member who exerted undue influence." (Doc. No. 1 at ¶ 23.)

The Ohio Supreme Court set forth the elements of an intentional interference with expectancy of inheritance claim as follows:

> (1) an existence of an expectancy of inheritance in the plaintiff; (2) an intentional interference by a defendant(s) with that expectancy of inheritance; (3) conduct by the defendant involving the interference which is tortious, such as fraud, duress or undue influence, in nature; (4) a reasonable certainty that the expectancy of inheritance would have been realized, but for the interference by the defendant; and (5) damage resulting from the interference.

*Firestone v. Galbreath*, 67 Ohio St.3d 87, 88 (1993). *See also Wickline v. Hoyer*, 2012 WL 760779 at * 2 (Ohio App. 10th Dist. March 8, 2012).

The County Defendants argue that "Plaintiffs have pled no facts (only conclusory statements) which would satisfy [the above] elements." (Doc. No. 25 at 18.) Upon careful review of the Complaint, and in the absence of any meaningful argument from the Plaintiffs to the contrary, the Court agrees with the County Defendants that Plaintiffs have failed to sufficiently allege a plausible claim for tortious interference with rights of inheritance under Ohio law.

Accordingly, it is recommended that Count Two of the Complaint be dismissed with prejudice as to the County Defendants for the additional reason that it fails to sufficiently plead a claim against these Defendants as a matter of law.

### b. Tortious Interference with Child/Parent Relationship (Count Three)

In Count Three, Plaintiffs allege that "Defendants negligently interfered with the constitutional rights of a child to be with their parent at the time of his or her death. The loss of this second most important time in a person's life was taken from the Plaintiffs." (Doc. No. 1 at ¶ 25.)

Plaintiffs have not directed this Court's attention to any Ohio case law recognizing an independent claim for "tortious interference with adult child/parent relationship." However, the

25

Ohio Supreme Court has held that adult emancipated children may recover for loss of parental consortium.  *See Rolf v. Tri State Motor Transit Co.*, 91 Ohio St.3d 380 (2001).  The purpose of this claim is to compensate the plaintiff for the enjoyment and companionship lost due to the injury or death of his or her parent.  *Id*. at 382.  *See also Martin v. City of Broadview Heights*, 2011 WL 3648103 at * 16 (N.D. Ohio Aug. 18, 2011).

To the extent the Complaint can be construed to assert a claim for loss of parental consortium, the Court finds Plaintiffs have failed to set forth sufficient factual allegations to establish plausibility.  Plaintiffs do not allege they were deprived of Mr. Lemon's companionship due to his injury or death, as required by Ohio law.  Moreover, while they allege that Mr. Lemon was "wrongfully removed" from their residence, Plaintiffs do not allege they were thereafter deprived of his society and companionship.  Accordingly, and in the absence of any meaningful arguments by Plaintiffs to the contrary, it is recommended that Count Three of the Complaint be dismissed with prejudice with respect to the County Defendants for the additional reason that it fails to sufficiently plead a claim against these Defendants as a matter of law.

### c.        Breach of Fiduciary Duty (Count Four)

In Count Four, Plaintiffs allege only that "[t]he Defendant owed a duty of care to properly provide for the protection and welfare of Mr. Lemon and did breach such duty of care." (Doc. No. 1 at ¶ 27.)  Plaintiffs further allege that "Defendant's acted wrongfully in their efforts in taking Mr. Lemon from his children, without affording any due process to Plaintiffs." (Doc. No. 1 at ¶ 28.)

To prove a claim for breach of fiduciary duty under Ohio law, the claimant must establish the following elements: (1) a duty arising from a fiduciary relationship; (2) a failure to observe

26

the duty; and (3) an injury resulting proximately from that failure.  *See Ford v. Brooks*, 2012 WL 760741 at * 2 (Ohio App. 10th Dist. March 8, 2012); *Evans v. Chambers Funeral Homes*, 2008 WL 2766173 at * 3 (Ohio App. 8th Dist. July 17, 2008).  A claim for breach of fiduciary duty is basically a negligence claim requiring a higher standard of care.  *Strock v. Pressnell*, 38 Ohio St.3d 207, 216 (1988). "'A "fiduciary relationship" is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'" *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 282 (1993) (quoting *In re Termination of Emp. of Pratt*, 40 Ohio St.2d 107, 115 (1974)).

The County Defendants argue that Plaintiffs fail to sufficiently allege that the County Defendants had "at any time any fiduciary relationship with the Plaintiffs." (Doc. No. 25 at 20.) Upon review of the Complaint, and in the absence of any argument from Plaintiffs to the contrary, the Court agrees with the County Defendants and recommends that Count Four of the Complaint be dismissed with prejudice for the additional reason that it fails to sufficiently plead a claim against these Defendants as a matter of law.

> ### d.        Negligent Hiring and Training (Count Five)

It is unclear whether Plaintiffs intend to assert Count Five ("Negligent Hiring and Training") against the County Defendants as a federal or state law claim. To the extent it is asserted as a federal claim, the Court previously recommended dismissal in Section IV.B.2 of this document.

To the extent it is asserted under state law, the Court finds Plaintiffs fail to allege a plausible claim for relief.  "Negligent hiring, retention, and supervision claims under Ohio law require proof of five elements: (1) the existence of an employment relationship; (2) the employee's

incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee was the proximate cause of the plaintiff's injuries." *Watson v. City of Cleveland*, 2006 WL 2571948 at * 10 (6th Cir. Sept. 8, 2006) (citing *Linder v. Am. Nat'l Ins. Co.*, 155 Ohio App.3d 30 (2003)).

Plaintiffs' sole allegation with respect to this claim is as follows: "Defendant, Trumbull County, either on its own or through its agents, negligently failed to hire, properly train and supervise its employees in the proper legal means of taking an adult from their home." (Doc. No. 1 at ¶ 30.)  The County Defendants argue the Complaint's conclusory allegations are insufficient.

Upon review of the Complaint, and in the absence of any argument from Plaintiffs to the contrary, the Court agrees with the County Defendants that, to the extent the Complaint states a state law claim for negligent hiring and training, Plaintiffs have failed to sufficiently allege a plausible claim for relief.  Accordingly, it is recommended that Count Five of the Complaint be dismissed with prejudice for the additional reason that it fails to sufficiently plead a claim against these Defendants as a matter of law.

### V.  Conclusion

For the foregoing reasons, it is recommended that the County Defendants' Motion for Judgment of the Pleadings (Doc. No. 25) be GRANTED.  It is further recommended that Plaintiffs' federal and state law claims against these Defendants be dismissed with prejudice.


                                                           s/ Greg White
                                                           United States Magistrate Judge

Date: October 7, 2013

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

29